Yes, good morning, your honors. Good morning. My name is Charlie Nett and I'm appearing on behalf of Petitioner Ruben Lopez Ramos. This is a claim arising under the Equal Protection Component of the Fifth Amendment in which Mr. Lopez asserts that prior to the February 27, 2001 date of the Child Citizenship Act, Section 320 of the Immigration Nationality Act, 8 U.S.C. Section 1431 impermissibly discriminated against members of his class as compared to members of a similarly situated class identified at former Section 321 of the INA, 8 U.S.C. Section 1432, by allowing members of the favored class to automatically derive citizenship from a U.S. citizen parent while members of his class could not. To be clear, Lopez's class, which I refer to as the 1431 class, consists of persons who were born outside the United States to one alien and one citizen parent and did not acquire citizenship at birth, were admitted to the United States as lawful permanent residents prior to their 18th birthdays, thereafter resided in the United States in the sole legal and physical custody of their citizen parent prior to their 18th birthday. Members of the more favored class, which I've identified as the 1432 class, were born outside the United States to two alien parents, were admitted to the United States as lawful permanent residents prior to their 18th birthday, and thereafter resided in the sole legal and physical custody of a parent who had naturalized prior to their 18th birthday. Notably, the distinctions between the class members were eliminated altogether with the enactment of the Child Citizenship Act, which merged former Section 1431 and Section 1432 into an amended version of Section 1431, which now provides for the automatic derivation of citizenship for members of both classes. Unfortunately, because Mr. Lopez was over age 18 by the effective date of the Child Citizenship Act, in conjunction with the fact that the Child Citizenship Act was not retroactive, it did not apply to him. You know, I didn't see in the brief a direct response to the legislative history that was cited at page 20 of the government's brief. Is your citation to Schneider v. Rusk meant to answer that argument? To their citation to what legislative history, Your Honor? At page 20 of the government's brief, there is legislative history cited. See, what I'm trying to get at is whether or not you can explain how a case involving persons who are already citizens is applicable to a case involving a person who is not yet a citizen. Yes, Your Honor. You know, does Congress—I mean, it would seem that Congress would have more discretion in the latter case. Well, actually, Your Honor, our position is that Congress has great latitude with regard to setting criteria for under what circumstances a person can naturalize. They also have great latitude with regard to determining under what circumstances a person can acquire citizenship at birth. They don't even have to allow persons who are born outside the United States to acquire citizenship at birth if they don't want to, which I believe there was a 50-year period in our country's history where it wasn't allowed. They also have great latitude as far as determining the criteria for naturalization. But once a person has naturalized or once a person has become a citizen, they share all of the rights, the same as a citizen who was born here in the United States or otherwise. The reason that we look at—the reason that we're able to attack this is that there's two components to a person's claim to citizenship, especially when they're claiming that it's acquired through their parent. In Miller v. Albright, which was cited by the government in their brief at page 10, the Supreme Court determined that where a petitioner's claim to citizenship relies heavily on the proposition that his or her citizen parent should have the same right to transmit citizenship as would another citizen parent, the court should evaluate the alleged discrimination against the parent as well as its impact on the child. And what our position is is that if the government's—if the manner in which Congress is classifying citizens is based on how their parent acquired their citizenship, that's not a legitimate basis for making that classification. Mr. Dent, there were a couple ways for Mr. Lopez to achieve citizenship which were not pursued, correct? That is correct. There's the 1433A route, which I think the government references at page 17. Also, Mr. Lopez would have achieved citizenship if his mother had applied for citizenship before he was born. Is that correct? Well, his mother actually was a citizen when he was born. His mother had actually derived her citizenship through her own U.S. citizen mother. So Mr. Lopez's grandmother was a natural-born U.S. citizen who met the physical present criteria. She married a Mexican man, moved to Mexico. Mr. Lopez's mother was born in Mexico, and the mother automatically acquired citizenship at birth. She didn't know it at the time. The mother always resided in the United States, or Mr. Lopez's grandmother always resided in the United States. She subsequently filed a petition for Mr. Lopez's mother. She came to the United States, and later Mr. Lopez came at age 10 as her derivative beneficiary. And I want to focus in then on Mr. Lopez's mother applies for citizenship after he's born. Is that correct? That's correct. Well, she was a citizen. She just didn't know it. She didn't know. After she had been admitted as a permanent resident. And that was after he was born. That's correct. But again, the acquisition of citizenship was automatic at her birth. She was just unaware of it. Thank you. So here, again, our dispute isn't with regard to Congress's ability to. We concede that Congress has the ability to make physical presence requirements. We concede that they have the wide latitude with regard to how a child may automatically derive their citizenship, like the 1432 class. In that class, Congress has said, look, if a parent is residing in the custody of a parent who is naturalized, and the child has been admitted as a lawful permanent resident and is living in that parent's sole legal and physical custody, the child of the parent who is naturalized is automatically a citizen. The parent doesn't have to manifest any intent that the child become a citizen. And that's why we're arguing that there's prejudice here, because under Mr. Lopez's circumstances, Congress required that his parent manifest an intent that he become a citizen by filing that petition for naturalization. And that assumes a lot. That assumes that a parent who's come to the United States is aware that there's a process through which they can file that petition for naturalization. It assumes that they have the sophistication and or the means to pursue it as well. And so it's a bigger slight than what it would appear at first glance. So really, this is a case where the legitimacy of Congress's classification here is in direct contravention of the Supreme Court's decision in Schneider v. Rusk, where they determined that Congress could not discriminate between classes of citizen based on how they became citizens. And if we're using Miller v. Albright as the touchstone here, which says, hey, you have to look at the discrimination that the parent who is purportedly transmitting citizenship, as well as its impact on the child, then here, where 1431 does not provide and 1432 does provide, it has to be struck. You know, it appears that Lopez Ramos could have become a citizen at the age of 18 without an additional physical presence requirement, right? Well, by that point in time, he would have established his five years of physical presence through which he could have naturalized on his own. But again, Your Honor, the point being that where the similarly situated class gets citizenship, acquires citizenship without any act on their part or without any act on their parents' part, while requiring members of another class whose parents just acquired their citizenship in a different manner. But see, what I'm trying to get at is, if it's true that he could have, OK, how is he harmed by the statute rather than by his own failure to seek citizenship at age 18? Because, Your Honor, if his mother had naturalized, he wouldn't have had to do anything. And that affirmative act is a big thing in many instances. If his mother had acquired her citizenship through naturalization rather than by birth abroad to a U.S. citizen, then he would have automatically been a citizen and he would have been forever protected from deportation. By requiring that affirmative act on his part, Congress discriminated against him. This is first impression, too, isn't it? It is, Your Honor. Oh, how lucky we are. Again, this case, it's all about the interplay between those three Supreme Court cases, about the interplay between Schneider v. Brusk with the case that's been cited by the government, Rogers v. Belay, and Miller v. Albright. The only interplay that Miller v. Albright is involved in is that it stood for the proposition that you don't just look at discrimination towards the child who's seeking citizenship. You look at it also with regard to the citizen parent through whom the alleged discrimination occurred. Here, in requiring and preferring a group of citizens who became citizens through naturalization over a group of citizens who acquired their citizenship at birth, Congress created an impermissible class, created a second class of citizenship, which is forbidden by the Supreme Court in Schneider v. Brusk. And, Your Honor, I think I had reserved— Save your time. Yes, thank you. Save your time. Good morning, Mr. Schor. Good morning, Your Honors. May it please the Court, my name is David Schor. I represent the Attorney General of the United States. In this immigration matter, the petitioner, Mr. Lopez, does not contest that he was convicted of an offense triggering his removal. And he instead argues that he should be considered a citizen because, he claims, the statute discriminates against natural-born citizens in favor of naturalizing citizens. Because that is incorrect, the statute does not treat like parties in a different manner. The Court should dismiss this petition for review. First, Mr. Lopez predicates this equal protection claim on what is really an apples-to-oranges comparison. These are not similarly situated parties. So at bottom, what we have is a child born abroad to one citizen and one non-citizen parent compared against a child of a single custodial parent who is naturalizing or has naturalized after the birth of that child. So the circumstances are totally different, particularly, and perhaps most germane, is the timing. That is, the naturalizing parent acquires citizenship while the child is born, or after the child has been born and residing in the custody of that parent. And so it's these difference in the parent's circumstances that explains any difference in treatments between the offspring, and that is the parent's ability to transmit their citizenship to the foreign-born offspring. In either instance, a child born abroad of a U.S. citizen or a child of non-citizens born abroad, in order to transmit any acquired citizenship, the parents have to satisfy different requirements because of their circumstances to establish their ties to the United States. In both cases, it really comes down to a residency requirement. I'm getting a bit of an echo. I apologize. Is this too close? No, it's good. Okay, sorry. You're fine. Yeah, you're fine. Okay, thanks. Everyone is fine. This is not a case of discriminatory treatment of one group or preferential treatment of another group. In both cases, if a parent wants to transmit their citizenship to a child, they have to establish ties to the United States by satisfying physical presence requirements. So for a naturalizing parent, they have to establish their eligibility to naturalize, and that is they've been in the United States five years after being admitted as a lawful permanent resident, and they've been a person of good moral character during that time. For the natural-born citizen parent, like Mr. Lopez's mother, in order for her to automatically transmit her citizenship to a child born abroad, she had to have satisfied a 10-year physical presence requirement before the child's birth, and this is five years after age of 14 for the parent. She didn't satisfy that requirement, so she didn't automatically transmit her citizenship. So what we're talking about are two different means of conferring citizenship to a foreign-born offspring that differ because of the circumstance. Would you agree, though, that the portion of Schneider v. Rusk that's quoted on pages 9 to 10 of Petitioner's brief appears to disavow the sort of justification that you're urging? No, Your Honor. In Rogers v. Belay, the Supreme Court made clear that requiring— This is the same universal treatment for everybody who wants to transmit citizenship to a foreign child. It's the same across the board. There's not two classes of citizens. Everyone is on the same level playing field here, and that is, in each case, you have to establish ties to the United States by satisfying a physical presence requirement. So this is not taking something away from someone or holding them to some sort of higher or different standard. And again, it's the result of circumstance. And I do want to make this point, a point that the petitioner has not responded to, which is, if Mr. Lopez's mother had come to the United States and naturalized before his birth and then gone back and resided in Mexico and then later comes back to the United States after he's born in Mexico, he would be in the exact same position he is in now. This is not better treatment of naturalized versus natural born or vice versa. It's simply a question of the timing of the sequence of events. He was not—I'm sorry. She did not satisfy at the time of his birth the physical presence requirement. In fact, she didn't enter the United States until after he'd already been born. And as Rogers v. Belay makes clear, it is rational for Congress to require as a precondition for extending the benefit, which, again, not a right, and Congress has wide latitude to decide who and under what circumstance a person may transmit citizenship to a foreign-born child. And Congress can rationally require a showing of ties to the United States by requiring physical presence. So for a citizen, someone who's born a citizen, it's 10 years in the United States. For someone who's naturalized after the child has been born, it's just five years. And again, it's the timing of the events there and the circumstance of the parents that is the relevant inquiry, not differential treatment of similarly situated class members. I do want to make just one point on standing, third-party standing. The government didn't press the issue in our opening brief. It is, of course, the petitioner's burden to show that he is third-party standing to raise an equal protection claim on behalf of his mother, as he's just indicated that his mother was the aggrieved party. So the government does not concede that he is established third-party standing. Now, even if we accept arguendo that there is an injury to the petitioner and that he has a close relationship with his mother, he hasn't shown or alleged even a hindrance to her ability to have filed a suit on his behalf as a minor or her own behalf, or a suit to which they could both be parties, or to request a certificate of citizenship on his behalf. And then if that was denied, go to court. And by all accounts, his mother is still alive, unlike the parent in the Supreme Court case, Morales-Santana. So there's been no showing whatsoever to establish standing in this matter. So in summation, Your Honors, these are two different circumstances rather than a similarly situated group. And Congress can rationally require a showing of ties to the United States in order to confer the benefit of transmitting citizenship to a child born abroad. And for those reasons, the Court should dismiss this petition. I apologize. I do want to make just one final point. The petitioner refers to his class repeatedly as 1431. The petitioner, of course, never fell under prior Section 1431. He essentially wants the Court to rewrite that statute to basically say, 1431 basically said, if you're born abroad to one citizen and one non-citizen, as he was, that you become a citizen automatically when the non-citizen naturalizes. And so his father never naturalized, and he, therefore, was never covered by 1431. He wants the Court to write in an exception saying, oh, but if you are in the custody of a single parent in the United States, then we're going to waive the requirement that the non-citizen parent naturalize. So I just want to make the point that his sort of classification of his own group does not accord with the language of the statute. And what he's asking the Court to do is rewrite the statute to favor him. However, Congress rationally chose a different policy in this case, which was to require a showing of physical presence by a parent. And petitioner's mother failed to satisfy that requirement. And for that reason, the Court should dismiss this petition. Thank you, Your Honor. Your Honor, I'm glad Mr. Schor brought up the example from his brief on page 17. He noted, if for one example, Lopez's mother had attained citizenship by naturalization before the time of Lopez's birth, but then resided in Mexico, just as she, in fact, did, Lopez would still be a non-citizen. That is not correct. If she had acquired her citizenship through naturalization, returned to Mexico, had him come back into the United States, and he entered the United States as a permanent resident, he absolutely would have been a citizen under Section 1432 if he was residing in her sole legal and physical custody. And that's the crux of our claim. They are—Congress discriminated against two separate classes of citizens. They said to the 1432 class, if you were admitted as a permanent resident and you're residing in the sole legal and physical custody of your citizen parent, you're automatically a citizen, you don't have to do anything more. To 1432, they said both of your parents need to be citizens, period. They didn't address situations like Lopez where he was residing in the sole legal and physical custody of his citizen parent because they allowed something under 1432 that they did not allow under 1431. It was an impermissible class of citizen. They were extending more rights to the citizen parent who had naturalized than they were extending to the citizen who had acquired citizenship at birth, whether it be in the United States or whether it be by birth abroad to a U.S. citizen parent than they were extending to them. I would also note that with regard to the case that cited by the Attorney General, Rogers v. Belay, under those circumstances, that didn't take anything away from Schneider v. Rusk. The proposition that Congress cannot discriminate between classes of citizens based on how they acquired their citizenship still stands. The only thing that Congress said in that instance is that persons who were born abroad during a particular period where Congress required both a condition precedent and a condition subsequent be met, that was permissible. The citizenship by birth abroad at that point in time that provided the condition subsequent didn't put them on equal standing with another citizen. They were a conditional citizen. They were a provisional citizen. They were a citizen subject to a condition precedent, but they weren't an unconditional citizen, and there's a difference there. So it allowed them to draw that distinction at that particular point in time. That was permissible, but any other classes that are drawn of or born of how the parent acquired citizenship are impermissible pursuant to Schneider v. Rusk. Thank you both, and the case will be taken under advisement. Thank you very much. Thank you.